# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| EDWARD DALE BURGDORF, | ) |
| Plaintiff, | ) |
| v. | ) No. 4: 15 CV 329 RWS |
| WILLIAM MCKINNEY, et al., | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Burgdorf was a prisoner at Potosi Correctional Center when he allegedly injured his left wrist while working in the kitchen. He claims that following the incident, he sought medical care from Defendant Dr. McKinney, who examined Burgdorf's wrist and determined that X-rays were unnecessary. Burgdorf claims that X-rays later showed "bone damage" to his left wrist. In this *pro se* § 1983 action, Burgdorf alleges that McKinney violated the Eighth Amendment by refusing to provide him adequate medical care and seeks injunctive relief and $40 million dollars in compensatory and punitive damages. McKinney moves for summary judgment on the ground that Burgdorf's claim amounts to a mere disagreement with his medical care which is not actionable under the Eighth Amendment as a matter of law. Burgdorf opposes summary judgment, and the issues are fully briefed. Because the undisputed facts demonstrate that McKinney is entitled to judgment as a matter of law, the motion for summary judgment will be granted for the following reasons.

### Standards Governing Summary Judgment

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Undisputed Background Facts

Burgdorf's undisputed medical records show a medical history of right wrist surgery in 2002, and X-rays revealing mild negative ulnar variance with some early degenerative changes to the wrist joint in 2008. He has been routinely seen by medical staff and given Ibuprofen for chronic pain since January 2014.

In June 2014, Burgdorf saw the nursing staff for complaints of pain in his wrists and renewal of Ibuprofen. Examination revealed good range of motion in both wrists. Burgdorf was given Ibuprofen for pain and referred to Dr. McKinney for further evaluation. McKinney examined Burgdorf for wrist pain on July 2, 2014. Burgdorf told McKinney that his left wrist got caught between a door and a food cart about one month prior. Physical examination revealed no soft tissue swelling or discoloration of Burgdorf's wrists, full active range of motion and normal fine motor control in Burgdorf's wrists and fingers, normal strength in his wrists and

fingers, and normal hand grip, all of which were consistent with a soft tissue injury. McKinney assessed Burgdorf's chronic paresthesia in his right ulnar nerve as stable, and he noted a recent soft tissue injury to his left wrist. McKinney prescribed Ibuprofen, wrote a lay-in restriction preventing him from pushing the food cart, and ordered routine lab work and a follow-up examination six months later.

Burgdorf continued to receive Ibuprofen regularly and was seen again by the nursing staff on August 25, 2014, at which time he reported that his left wrist was still painful. Despite Burgdorf's complaints of pain, the examining nurse observed that Burgdorf was in no acute distress, could grip with his hands, and displayed a full range of motion in his fingers, hands, and arms. However, Burgdorf was referred to McKinney for further evaluation. McKinney saw Burgdorf again on September 5, 2014. At that time, Burgdorf reported pain in his wrists and a "popping" sensation in his left wrist. McKinney examined Burgdorf but found no changes from his last visit. McKinney assessed Burgdorf with a suspected strain in his left wrist and chronic symptoms of ulnar distribution in his right wrist. McKinney prescribed Prednisone for 30 days to determine whether Burgdorf had any inflammation in his left wrist and Ibuprofen for pain. McKinney also ordered an X-ray of Burgdorf's left wrist, which was performed on September 10, 2014. The X-ray showed only degenerative changes in Burgdorf's left wrist and revealed no evidence of fracture or dislocation.

Burgdorf continued to receive Ibuprofen from the nursing staff for pain. He next saw McKinney on November 19, 2014. Burgdorf reported no improvement on Prednisone or changes in his left wrist. Burgdorf stated he had no problems with the use of his left hand or the strength of his wrist or any other motor symptoms. McKinney's physical examination of Burgdorf revealed no soft tissue swelling or discoloration of his wrists. Burgdorf had a full

range of motion in both wrists, normal grip strength in his left hand, and he moved both hands and arms without pain or limitation. McKinney's examination further revealed that Burgdorf's left ulnar nerve pain only occurred in certain positions and was immediately alleviated by a change of position. After reviewing the X-ray and his findings with Burgdorf, McKinney advised Burgdorf that additional radiological evaluations and/or medications beyond Ibuprofen were unlikely to provide any relief for his condition. McKinney based this assessment on his physical examinations of Burgdorf (which revealed a lack of motor and neurological symptoms, as well as a lack of palpation defects), Burgdorf's confirmed non-inflammatory condition (demonstrated by the lack of improvement while on Prednisone), the fact that Burgdorf's pain was positional and immediately relieved by a change in position, the absence of any fracture, dislocation, strain, or sprain of the left wrist, and the lack of any verifiable symptoms apart from Burgdorf's reported positional pain. McKinney directed Burgdorf to follow up if needed. Burgdorf continued to receive Ibuprofen as needed for pain. McKinney determined that no other pain medication was medically indicated based on Burgdorf's subjective complaints and objective presentation. McKinney also believed that a wrist brace for Burgdorf's left wrist was not medically indicated and would have caused him to lose muscle and functioning in his wrist. McKinney also believed that no referral to an outside specialist was medically indicated.

Burgdorf saw the nursing staff on December 17, 2014 and asked to see a doctor to renew his lay-in restriction. McKinney saw Burgdorf again on December 29, 2014. Burgdorf reported that he was still experiencing pain in both wrists and stated that he believed his symptoms were aggravated by his new job as a dorm worker. He also reported increased stress. McKinney examined Burgdorf and found no changes from his last examination. Burgdorf's left hand grip was still normal, and he displayed normal motor control. McKinney assessed wrist pain and

ulnar nerve distribution, possibly related to repetitive use, and he believed that Burgdorf's increased sense of pain may have been causing stress. McKinney suggested that Burgdorf take Nortriptyline, an antidepressant, which would help with chronic pain, sleep, and stress. Burgdorf declined, so McKinney told him to return as needed. McKinney assessed that Ibuprofen remained sufficient to treat the level of pain reported by, and observed in, Burgdorf, so no additional pain medications were prescribed. Burgdorf continued to receive Ibuprofen for pain and reported good pain relief from its usage to the nursing staff in March 2015.

Discussion

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. Luckert v. Dodge County, 684 F.3d 808, 817 (8th Cir. 2012). To prove his deliberate indifference claim, Burgdorf must present evidence that McKinney committed "acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." Nelson v. Shuffman, 603 F.3d 439, 448 (8th Cir. 2010) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Burgdorf must demonstrate he suffered from an objectively serious medical need and that McKinney knew of, but deliberately disregarded, the need. Meuir v. Green County Hail Emps., 487 F.3d 1115, 1118 (8th Cir. 2007). "Whether a prison's medical staff deliberately disregarded the needs of an inmate is a fact-intensive inquiry." Nelson, 603 F.3d at 448. "The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." Id. at 448-49. "A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." Id. at 449 (citing Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992)). "In the face of medical records indicating that treatment was provided and physician

5

affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." Id. (citing Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

Here, McKinney's affidavit and the medical records establish that Burgdorf was provided appropriate treatment for his wrist pain. Contrary to Burgdorf's allegations in his complaint, McKinney never denied Burgdorf medical care. Instead, the undisputed evidence demonstrates that McKinney provided Burgdorf with examination, testing, treatment, and assessment for his reported injuries. After Burgdorf asked to see a doctor for his wrist pain, McKinney examined him and found no soft tissue swelling or discoloration of his wrists, full range of motion and normal fine motor control and strength in Burgdorf's wrists and fingers, and normal hand grip. McKinney noted that his findings were consistent with a soft tissue injury, and each subsequent examination by McKinney revealed no changes in Burgdorf's wrists. McKinney's treatment included Ibuprofen for pain, which McKinney assessed as sufficient to treat Burgdorf's type of injury, as well as medical lay-in restrictions. McKinney did not believe that X-rays were medically necessary at that time, given his assessment of a soft tissue injury. Although Burgdorf complains that that the failure to order X-rays at that time amounted to a denial of medical care, his personal opinion about his need for X-rays is simply insufficient to create a question of fact regarding the adequacy of his treatment in the face of McKinney's affidavit and the undisputed medical records demonstrating that X-rays were unnecessary at that time.

When Burgdorf continued to complain of wrist pain, McKinney examined Burgdorf and found no changes in his wrists. In response to Burgdorf's subjective complaints McKinney conducted further diagnostic testing, a trial of prednisone to rule out inflammation injuries, and ordered X-rays, which showed only

degenerative changes and no fracture or dislocation.[1] Based on the results of his physical examinations of Burgdorf, X-rays, Burgdorf's lack of an inflammatory condition or motor or neurological symptoms, lack of palpation defects, and the fact that Burgdorf's pain was positional and immediately relieved by a change in position, McKinney concluded that, in his medical judgment, additional radiological evaluations and/or medications beyond Ibuprofen were unlikely to produce any benefit for Burgdorf's condition. He continued to treat Burgdorf with Ibuprofen, which McKinney believed sufficient to relieve any pain, and told him to follow up as needed. When Burgdorf reported continued pain and stress, McKinney again examined him and found no changes in Burgdorf's wrists. McKinney advised an antidepressant to assist with pain, sleep, and stress, but Burgdorf declined the prescription. Burgdorf continued to receive Ibuprofen for his pain and by March of 2015 reported good relief from its use.

The undisputed evidence demonstrates that McKinney never denied care to Burgdorf. Instead, McKinney exercised sound medical judgment in treating Burgdorf and provided him timely and appropriate medical care. McKinney considered but rejected a wrist brace, which could have caused Burgdorf additional problems without alleviating his positional pain. At no point was referral to an outside specialist or pain medication other than Ibuprofen medically indicated, and Burgdorf's subjective belief to the contrary does not create an issue of fact sufficient to resist summary judgment. In an attempt to evade summary judgment, Burgdorf provides incomplete portions of medical records, but these records predate the incident at issue here by several years and are related to his right wrist. As such, they do not create a genuine dispute of material fact as to whether McKinney was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Burgdorf's complaint amounts to nothing more than a disagreement with McKinney's prescribed course of treatment, which fails to

---

[1] Degenerative changes do not amount to "bone damage" as alleged in the complaint.

establish an eighth amendment violation as a matter of law. Nelson, 603 F.3d at 449. As such, McKinney is entitled to judgment as a matter of law on Burgdorf's complaint, and Burgdorf's complaint will be dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [16] is granted, defendant McKinney shall have summary judgment on plaintiff's complaint, and Burgdorf's complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                                                    */s/ Rodney W. Sippel*
                                                    RODNEY W. SIPPEL
                                                    UNITED STATES DISTRICT JUDGE

Dated this 27th Day of October, 2015.